# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

TRICIA C., individually, and as the )
Parent and Next Friend of K.A. and )
K.M., minors, )
                               )
          Plaintiffs, )
                               )
     v. )     No.  04-3172
                               )
TRI-COUNTY SPECIAL )
EDUCATION ASSOCIATION, )
SHERYL A. PIERCY, individually and )
in her official capacity as Executive )
Director of Tri-County Special )
Education Association, ILLINOIS )
STATE BOARD OF EDUCATION, )
and RANDY DUNN, individually and )
in his official capacity as interim State )
Superintendent, )
                               )
          Defendants. )

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on a Motion to Dismiss Plaintiffs'

Second Amended Complaint with Regard to Defendants Tri-County Special

Education Association and Sheryl Piercy (d/e 50) and Defendants Illinois

State Board of Education and Randy Dunn's Motion to Dismiss (d/e 52).

For the reasons set forth below, Defendants Tri-County Special Education Association and Sheryl Piercy's Motion is allowed, in part, and denied, in part. Defendants Illinois State Board of Education and Randy Dunn's Motion is allowed.

BACKGROUND

Tricia C. is the mother of minors K.A. and K.M. According to the Second Amended Complaint, K.A. is a 13-year-old boy with learning disabilities. K.M. is K.A.'s older sister and an honor student. At all relevant times, Plaintiffs resided within the West Lincoln-Broadwell Elementary School District No. 92 (the District). Bailey Climer is the Superintendent of the District. Tri-County Special Education Association (Tri-County) is a local education agency under the Illinois School Code. Tri-County, a special education cooperative, provides special education services to member school districts that have difficulty efficiently providing such services to their students. Under Illinois law, a special education cooperative like Tri-County is an entity that is separate from a school district and is created by joint agreement between school boards. 105 ILCS §5/10-22.31. Tri-County serves many school districts in McLean, Dewitt, and Logan (Illinois) Counties, including the District. Sheryl Piercy is the Executive Director of

Tri-County.

The Second Amended Complaint alleges that K.A. is in 7th grade, but that chronologically he should be in 8th grade. From kindergarten through 6th grade, K.A. attended school in the District. K.A. enrolled in the District's kindergarten program in the fall of 1996. Soon after the school year began, K.A.'s teacher noted that he had weaknesses in certain areas. The District recommended that K.A. attend a Head Start program for a year and enter kindergarten in the fall of 1997. Tricia withdrew K.A. from kindergarten and applied for the Head Start program; however, K.A. was not enrolled in Head Start because the program was full. After K.A. was out of school for several months, Tricia re-enrolled him in the District's kindergarten.

According to the Second Amended Complaint, at the end of the 1996-1997 school year, the "District Superintendent/Principal steered Tricia into agreeing to retaining K.A. and repeating his Kindergarten school year." Second Amended Complaint, ¶ 65. On August 27, 1997, the District created an individualized education program (IEP) for K.A. The IEP labeled K.A. primarily as "B/ED," indicating behavior and emotional disorders, with secondary labels of learning disability and speech/language disorders. Under

the IEP, K.A. was placed in a self-contained program for students with behavioral/emotional disorders in a neighboring school district for his second year of kindergarten.  Shortly after the school year began, K.A. was returned to his home school, where he attended general education kindergarten for half of the school day and a special education program for the other half.

Subsequent IEPs were prepared for K.A. beginning in May 1998. Under the IEPs, K.A. continued to receive special education services for a portion of each school day at his home school in the District.  In the Spring of 2000, however, K.A.'s IEP was amended to change his placement from his home school to a school in a neighboring district.  In May 2000, the District prepared an IEP for K.A. which included an increase in the amount of special education services K.A. would receive.  The May 2000 IEP also designated staff members of the Hammitt School to provide K.A.'s consultant services.  According to the Second Amended Complaint, the Hammitt School is a segregated program for severely emotionally disturbed children.  Second Amended Complaint, ¶ 76.

In the Fall of 2000, Tricia agreed to have K.A. evaluated by a

psychiatrist on the District's recommendation.[1]   In January 2001, K.A. underwent an evaluation by Dr. Michael Kent, a psychiatrist.  Dr. Kent determined that the Ritalin that K.A. was then taking was adversely affecting him and ordered that K.A. stop using it.  Dr. Kent prescribed a psychoactive drug, Respirdol, for K.A.  K.A., however, became gravely ill after just one dose of the Respirdol.  When Tricia consulted with her family doctor concerning the incident, he threw the Respirdol away, and informed her that it was an inappropriate prescription for K.A.  Because of this bad experience with Dr. Kent, Tricia withdrew her consent for a comprehensive evaluation of K.A.

At this point, Tricia observed a negative change in the District's treatment of her.  She believed that the District began mistreating her because it believed her to be non-compliant.  K.A. was in third grade at this time, but was reading at a 1.8 grade level.  Tricia sent complaints to an Illinois State Board of Education (ISBE) compliance officer and met with an ISBE administrator regarding her complaints.  According to Tricia, neither ISBE employee did anything.

---

[1]According to the Second Amended Complaint, Tricia did not understand the difference between a psychiatrist and a psychologist, and thought that K.A. was to be evaluated by an educational psychologist.  Second Amended Complaint, ¶¶ 82-83.

In February 2001, Tricia made a written request to the District for an Independent Educational Evaluation (IEE) of K.A. to determine the reasons for his learning problems.  In March 2001, the District requested a hearing from the ISBE to determine whether it had to agree to the IEE.  Tricia counter-filed for a hearing, raising multiple issues.

The District withdrew its request for a hearing, but nevertheless continued to refuse to pay for an IEE.  Tricia, therefore, obtained outside evaluations at her own expense.  In January 2002, Dr. Rudy Lorber found that K.A. had fourteen different learning disabilities.  Dr. Lorber also thought it was possible that K.A. was suffering from silent seizures and a central auditory processing disorder.  K.A. had a subsequent evaluation by Dr. Michael Chez, a pediatric neurologist, who confirmed the presence of silent seizures.  Trudi Reiser, a certified audiologist and speech language pathologist, confirmed the presence of a central auditory processing disorder.

According to the Second Amended Complaint, about the time that the due process hearing procedure began, Tricia submitted a formal complaint to ISBE outlining problems with the District and Tri-County.  Plaintiffs allege that Tricia submitted this complaint by handing it to the then-

Chairman of the Board of the ISBE at a public meeting in Normal, Illinois. Plaintiffs contend that, while the formal complaint overlapped with the due process hearing in some respects, it also contained issues in addition to those resolved in the due process hearing and that the ISBE failed to properly handle and process this complaint. According to the Second Amended Complaint, Plaintiffs have received no notice of the status or progress of this formal complaint.

In May 2001, at the meeting to establish K.A.'s IEP for the 2001-2002 school year, the District proposed placing K.A. in the Hammitt School. Tricia strongly opposed this placement. In August 2001, the District and Tricia participated in mediation with an ISBE mediator. Tricia and the District signed a mediation agreement which provided that K.A. would be evaluated by a psychiatrist and a psychologist. Dr. Berland, a psychiatrist, determined that K.A. was not behavior disordered. Despite this conclusion, the District did not change its determination of K.A.'s disability at this point, and insisted on waiting until the psychologist's evaluation report was completed to evaluate K.A.'s disability. Tricia objected to the second evaluation as unnecessary, and the ISBE accused the District of breaching the mediation agreement and acting in bad faith.

During this time, K.A. was segregated in a behavior disorder classroom and forced to ride the school bus alone.

In February 2002, Dr. Lorber wrote a letter to the District stating that the placement of K.A. in the behavior disorder classroom was detrimental to K.A. Tricia presented the District with a proposed consent order in May 2002. Amended Complaint (d/e 19), Ex. 3, Consent Order. The District refused to sign the proposed order. At some point in the Spring of 2002, Tricia attended a private meeting with counsel for the District Megan Guenther, Sheryl Piercy, Tricia's friend Nancy McGinnis, and Tricia's educational expert Sheri Zalar. According to Tricia, during that meeting, Guenther attempted to intimidate Tricia into abandoning the due process hearing.

The District set an IEP meeting for K.A. on May 24, 2002. Tricia requested that this meeting be rescheduled because K.M. was scheduled to undergo ankle surgery on May 24. The District did not reschedule the meeting, but offered that Tricia could participate by phone from the hospital. Tricia declined to do so and missed the meeting to attend her daughter's surgery. On May 25, 2002, Tricia was fired from her job for excessive absences. Tricia had used up all of her allowable time off

8

attending meetings regarding K.A.'s education, so she did not have time left to take off for K.M.'s surgery.

At the time Tricia requested the due process hearing, K.M. attended school in the District.  According to the Second Amended Complaint, the District retaliated against K.M. for her mother's advocacy on behalf of K.A. by forcing her to use a low hall locker despite K.M.'s physical difficulty in doing so due to her ankle problems.  As a result of this discrimination, on November 13, 2002, Tricia withdrew K.M. from the District and enrolled her in a private school, where K.M. remained until the end of her eighth grade year.

The ISBE held the due process hearing over the course of 35 days from December 2002 to October 2003.  The Hearing Officer's decision was issued April 12, 2004.  Tricia raised nine issues, which the Hearing Officer resolved as follows:

1.  Whether the School District deprived the Student of a free appropriate public education (FAPE) when it failed to fully evaluate the nature and the extent of the Student's disabilities.

    The two-prong test of FAPE established by [Board of Education of the Hendrick Hudson Central Sch. Dist. v.] Rowley, indicated that the School District did not meet either point specified in that standard.  It is evident that the School

District deprived the Student of a FAPE by denying him with [sic] a meaningful educational benefit.

2.     Whether the School District deprived the Parent and the Student of their procedural safeguards and denied the Parent an opportunity to participate in the formation of the Student's IEPs [Individualized Education Program].

It is clear that the Parent brought numerous evaluations and reports to IEP conferences and to other meetings with School District personnel, and it is also clear the School District personnel either ignored or discounted the contents of these reports.  The Parent's concerns were often disregarded and ignored.  When the Parent sought additional information upon which she could form educational decisions on behalf of her son, the School District sent her to a psychiatrist.  The School District infringed on the parent's opportunity to participate in the IEP process as an equal partner.

3.     Whether the IEPs prepared by the School District are reasonably calculated to provide the Student with an educational benefit.

For a FAPE, the <u>Rowley</u> court requires that special education services be sufficient to confer an educational benefit upon the child with a disability.  An educational benefit would permit the child to academically advance each year to a level equal to his potential.  Several tests, by both School District and independent evaluators, indicated that the Student has average intelligence.  Therefore, it would be reasonable to expect the child to academically advance.  Over a three year period, the Student continued to read at a 1.8 grade level.  The Student was not given an IEP that conferred on him a meaningful benefit.

4.     Whether the School District failed to provide a functional behavioral analysis and a behavioral management program that is appropriate to the Student's needs.

It is clear that School District personnel developed several functional behavior assessments and individualized behavior management programs.  The functional assessments were typically weak and often addressed behaviors that were irrelevant to the Student's programs.  The resultant behavioral management programs often addressed inconsequential or trivial behaviors.  In some cases, the Student's identified behaviors apparently increased during the period in which the behavioral management programs were in effect.

5.    Whether the School District failed to implement the IEPs for the Student or according to his terms, supports and services.

The Parent noted that the School District failed to provide significant portions of the IEPs in a timely fashion of [sic] in an educationally useful or legally sufficient manner.  The School District asserts that it implemented the IEPs according to its terms and to the extent the Student and Parent allowed their implementation.  From the testimony given and the evidence presented, it appears that the School District implemented the IEPs as they were written.

6.    Whether the School District's proposed placement at Hammitt School was appropriate for the Student.

School District personnel proposed placing the Student in Hammitt School on the [sic] May 21, 2001.  That proposed placement was clearly inappropriate to the Student's skills and to the Student's needs.  (The reasons why this placement was inappropriate was [sic] earlier elaborated on in the Finding of Facts section of this document.)  Beyond the earlier specified reasons, this placement was inappropriate for the following three reasons.  First, it was not the least restrictive placement in which the goals and benchmarks of that IEP could be met. Second, changing the placement from a resource room to a therapeutic day school is unreasonable.  There were several levels in the

continuum of placement which was [sic] "skipped over" in going to that restrictive placement option.   Finally, the School District's expert witness, Dr. Golden stated the placing [sic] the Student in Hammitt School was inappropriate and would result in the Student regressing, modeling inappropriate behaviors, and having no contacts with students without disabilities.   After receiving Dr. Golden's report the School District withdrew that placement option and recommended a less restrictive placement. Nevertheless, the Parent felt additional stress from the School District's proposal and further distrusted the motives behind the School District's recommendations.

7.     Whether the School District's proposed placement at Northwest School was appropriate for the Student.

The Parents contend that the placing the Student in a neighboring school district "Northwest School" was an inappropriate placement relative to his current and his future needs.  This placement is designed for students with emotional disorders and by the School District's admission is crowded. Even though the teacher is very skilled and very competent, this placement is not an appropriate placement for him at the present time.

8.     Whether the representatives of the School District coerced and intimidated the Parent and the Student [due] to the perceived, recorded, or actual disabilities of the Student.

It is clear that the School District representatives coerced the Parent throughout the Student's school career.  When the Student returned to the School District in his second year of kindergarten, the general education classroom teacher and the principal/superintendent both pressured the Parent into obtaining a prescription for methylphenidate and then maximizing the dosage until the Student displayed adverse side effects.  The intimidation faced by the Student's sister resulted in her withdrawing from the School District and enrolling in a

private school for her eighth grade year.  Throughout this due process hearing, there are several other examples of the School District representatives intimidating the Parent, including the incident in which the School District's attorney said to the Parent, "I'll get $50,000, and you won't get shit."

9.    Whether the representatives of the School District retaliated against the Parent and the Student due to the advocacy of the Parent.

The School District's attorney threatened the Parent during a meeting following an IEP meeting in which her words combined with her manner retaliated against the Parent for her filing of due process hearing against the School District.  The actions of the School District's witnesses, during the course of this hearing, displayed anger toward the Parent.  This anger was apparently caused by the Parent requesting a due process hearing.  According to one witness, the executive director of the Tri-County Special Education Cooperative was heard to admit that she intended to retaliate against the Parent immediately after talking to the Parent on the telephone.  There were examples of the School District's attorney taking actions against th Parent which were based on animosity and indignation.  The School District contends that its actions and statements were misrepresented and they were intended to be helpful in clarifying the choices faced by the Parent rather than being intended as [a] source of irritation.

Amended Complaint, Ex. 1, ISBE Impartial Due Process Hearing Decision and Order (Hearing Officer's Decision), p. 18-21.

The Hearing Officer determined that K.A. should attend Acacia Academy, a private school designated by the ISBE as an approved, non-public facility, for the remainder of the 2003-2004 school year and for the

2004-2005 school year.  The District was ordered to pay the tuition, fees, and all other costs, including transportation costs, associated with educating K.A. at Acacia Academy.  If K.A. could not attend Acacia Academy for any reason, the Hearing Officer ordered the District to pay all costs associated with his education at a facility of Tricia's choice.  The District and Tricia were ordered to meet prior to May 31, 2005, to create an IEP for K.A. for the Fall of 2005.

Plaintiffs filed the instant lawsuit on August 6, 2004.  Plaintiffs' eight-count Second Amended Complaint (d/e 43) raises claims under the Individuals with Disabilities Act (IDEA), § 504 of the Rehabilitation Act of 1973 (§ 504), the Americans with Disabilities Act (ADA), 42 U.S.C. § 1983, and various state law theories.  See 20 U.S.C. § 1400 et seq. (IDEA); 29 U.S.C. § 794 (§ 504); 29 U.S.C. § 12101 et seq. (ADA).  Specifically, the Second Amended Complaint alleges: (1) Tricia is entitled, under the IDEA, to recover her attorney's fees and costs for the underlying administrative hearing; (2) the IDEA entitles Plaintiffs to relief in addition to that ordered by the Hearing Officer; (3) ISBE and the State Superintendent failed to properly monitor the District and its representatives and to process Tricia's complaints to ensure a free appropriate public education (FAPE) for K.A.

and to prevent harm to Plaintiffs; (4) Plaintiffs are entitled to damages under the IDEA from the District and ISBE based on the repeated, excessive and outrageous nature of their violations; (5) intentional infliction of emotional distress by Defendant Piercy; (6) due process and equal protection claims pursuant to 42 U.S.C. § 1983 against the District, Tri-County, ISBE, and Piercy; (7) claims against the District, Tri-County, Piercy, ISBE and Dunn for violations of § 504 and ADA; and (8) abuse of process by Defendant Piercy.   On June 13, 2005, all claims against Defendant Climer and the District were dismissed with prejudice based on a settlement agreement between Plaintiffs and these Defendants.  Text Order, June 13, 2005.  The remaining Defendants have filed the instant Motions to Dismiss.

## ANALYSIS

Defendants move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction.  In analyzing such a motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences from those allegations in favor of the plaintiff.  Long v. Shorebank Dev. Corp., 182

F.3d 548, 554 (7th Cir. 1999).  Plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.  <u>United Phosphorus, Ltd. v. Angus Chemical Co.</u>, 322 F.3d 942, 946 (7th Cir. 2003).  A Rule 12(b)(6) motion to dismiss for failure to state a claim similarly requires the court to consider the allegations in the light most favorable to plaintiff and to accept all well-pleaded facts as true.  <u>Cole v. U.S. Capital, Inc.</u>, 389 F.3d 719, 724 (7th Cir. 2004).  A complaint should not be dismissed, under Rule 12(b)(6), for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 322 (7th Cir. 1996).

A.    <u>Defendants ISBE and Dunn's Rule 12(b)(1) Motion</u>

Defendants ISBE and Dunn assert that Plaintiffs' claims against them should be dismissed pursuant to Rule 12(b)(1), because (1) Plaintiffs lack standing and (2) the case is moot.  Turning first to the question of standing, ISBE and Dunn assert that Plaintiffs fail to allege a case or controversy with respect to the ISBE or Dunn.  Because ISBE and Dunn are raising a factual challenge to subject matter jurisdiction, the Court may consider evidence beyond the jurisdictional allegations of the Second Amended Complaint.  <u>See</u> <u>United Phosphorus, Ltd.</u>, 322 F.3d at 946.  Plaintiffs bear the burden

of establishing the required elements of standing.  <u>Reid L. v. Illinois State Bd. of Educ.</u>, 358 F.3d 511, 515 (7th Cir. 2004).  "Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision."  <u>Lee v. City of Chicago</u>, 330 F.3d 456, 468 (7th Cir. 2003) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).

The Court is convinced that these three prongs are satisfied.  While ISBE and Dunn characterize Plaintiffs' alleged injury as "based on the District and/or Tri-County's alleged violations of the IDEA," the allegations of the Second Amended Complaint are broader.  <u>Memorandum of Law in Support of Defendants Illinois State Board of Education and Randy Dunn's Motion to Dismiss (d/e 53)</u>, p. 6.  In addition to allegations regarding the District and Tri-County, Plaintiffs expressly allege that ISBE and Dunn failed to properly process Tricia's formal IDEA complaint.  IDEA regulations provide for a formal complaint process which is separate from the due

process hearing.  See 34 C.F.R. § 300.661(c).  While the State must set aside any part of a formal complaint that is being addressed in a due process hearing until the conclusion of the hearing, any issue in the complaint that is not a part of the due process action is not stayed and must be resolved in accordance with set procedures.  Id.  Plaintiffs argue that Tricia's complaint included issues outside the due process hearing and that, as of the filing of the Second Amended Complaint, they had not been informed of the status of the complaint.  If properly pled, these allegations would support a finding of an injury in fact and a causal relationship to the actions of ISBE and Dunn.  Moreover, Plaintiffs seek declaratory and injunctive relief, and a claim against ISBE and Dunn, if viable, could remedy the injury alleged here, i.e., the mishandling of Tricia's formal complaint.  Defendants ISBE and Dunn's Motion to Dismiss for lack of standing is denied.

ISBE and Dunn further assert that the case is moot based on the fact that Plaintiffs have resolved their disputes with the District through a settlement.  As set forth above, Plaintiffs assert claims relating to the ISBE's processing of Tricia's formal complaint.  These claims, if viable, are distinct from the claims against the District.  The case against ISBE and Dunn is not moot.  Defendants ISBE and Dunn's Motion to Dismiss under Rule

12(b)(1) is denied.

    B.    <u>Rule 12 (b)(6) Motions</u>

Tri-County, Piercy, ISBE, and Dunn have filed Motions to Dismiss pursuant to Rule 12(b)(6), asserting various theories under which they believe Plaintiffs fail to state a claim upon which relief can be granted. The Court will address Defendants' various arguments by Count.

    1.    <u>Counts I & II</u>

Counts I and II of the Second Amended Complaint raise IDEA claims. In Count I, Plaintiffs allege that Tricia, as the prevailing party, is entitled under the IDEA to recover her attorney's fees and costs for the underlying administrative hearing. In Count II, Plaintiffs appeal the administrative order, arguing that it contains multiple errors of law. As set forth below, Counts I and II are dismissed.

Turning first to Count I, the Court notes that Count I's prayer for relief mentions only the District, which is no longer a party to this suit. <u>Second Amended Complaint</u>, ¶¶ 186-88. To the extent Plaintiffs are seeking relief from Piercy, individually, in Count I, she is not a proper defendant in an IDEA suit. The IDEA applies expressly to a "State educational agency, State agency, or local educational agency," and does not

apply to employees of these agencies in their individual capacities.  20 U.S.C. § 1415(a); see also Weyrick v. New Albany-Floyd County Consolidated School Corp., 2004 WL 3059793, *7 n.3 (S.D. Ind. Dec. 23, 2004).  To the extent Plaintiffs are seeking relief from Piercy, in her official capacity, in Count I, these claims are dismissed as redundant to claims raised against Tri-County.  See Kerry M. v. Manhattan School Dist. #114, 2004 WL 2538303, *5 (N.D. Ill. Sept. 28, 2004) (citing cases).  To the extent Plaintiffs are seeking attorneys fees and costs from the underlying administrative hearing from Tri-County, these claims are dismissed because the Hearing Officer's Decision reveals that neither Tri-County nor Piercy were named parties to the administrative hearing.  Amended Complaint, Ex. 1, Hearing Officer's Decision, p. 1.  Plaintiffs concede this fact.  Moreover, the Court notes that the relief ordered by the Hearing Officer relates solely to the District.  Id. at 21-22.  IDEA's fee-shifting provision allows courts to grant attorney's fees to the prevailing party in an administrative hearing. T.D. v. LaGrange School Dist. No. 102, 349 F.3d 469, 479 (7th Cir. 2003). "A party prevails for purposes of federal fee-shifting statutes when he or she obtains actual relief on the merits of a claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in

a way that directly benefits the plaintiff." <u>Linda T. ex rel. William A. v. Rice Lake Area School Dist.</u>, 417 F.3d 704, 707-08 (7th Cir. 2005) (internal quotations and citations omitted). Because neither Tri-County nor Piercy were parties to the administrative hearing and Plaintiffs did not prevail against either Tri-County or Piercy in the Hearing Officer's decision, they are not liable for Tricia's fees and costs under the IDEA's fee-shifting provision. <u>See</u>, <u>e.g.</u>, <u>Reid v. Board of Educ., Lincolnshire-Prairie View Sch. Dist. 103</u>, 765 F.Supp. 965, 969 (N.D. Ill. 1991). Count I is dismissed.[2]

In Count II, Plaintiffs seek review of the Hearing Officer's decision. Plaintiffs' prayer for relief in Count II seeks specific relief, in the form of money damages, against the District, but also asks the Court to "include such orders against Tri-County and Dr. Piercy as are allowed by law" and to "issue declaratory relief against Tri-Count [sic] to prevent recurrence of their conduct as a District representative which violates the law." <u>Second Amended Complaint</u>, ¶ 203. To the extent Plaintiffs are seeking relief from Piercy, individually, in Count II, she is not a proper IDEA Defendant, as set forth above. 20 U.S.C. § 1415(a); <u>see also</u> <u>Weyrick</u>, 2004 WL 3059793, *7 n.3. To the extent Plaintiffs are seeking relief from Piercy, in her official

---

[2]Clearly, neither the ISBE nor Defendant Dunn are parties to Count I.

capacity, in Count II, these claims are dismissed as redundant to the claims raised against Tri-County.  See Kerry M., 2004 WL 2538303, *5 (citing cases).  Thus, the Court turns to an examination of the Count II claims against Tri-County.

Before a plaintiff may file a civil action based on IDEA violations in federal district court, he is required to exhaust his administrative remedies under the IDEA.  20 U.S.C. § 1415(i)(2).  As previously noted, it is clear from the Hearing Officer's Decision that neither Tri-County nor Piercy were named parties to the administrative hearing, a fact which Plaintiffs concede. Hearing Officer's Decision, p. 1.  Plaintiffs, however, argue that Tri-County and Piercy were given the opportunity to present arguments and evidence at the administrative hearing and that requiring further exhaustion would be futile.  As set forth below, Plaintiffs' arguments are unpersuasive.

"The purposes of requiring exhaustion of administrative remedies include: (1) permitting an agency to exercise its discretion and expertise; (2) developing technical issues and a factual record prior to judicial review; (3) preventing circumvention of agency procedures; and (4) avoiding unnecessary judicial review by allowing agencies to correct errors."  Kerry M., 2004 WL 2538303, at *6 (internal quotations and citations omitted).

However, if Plaintiffs can show that the pursuit of administrative remedies would be futile or inadequate, exhaustion will be excused.  Honig v. Doe, 484 U.S. 305, 326-27 (1988).  Plaintiffs argue that the purposes of exhaustion have been met and pursuit of administrative remedies against Tri-County would be futile and inadequate.

As was the case in Kerry M., it is clear from the Hearing Officer's decision that the nine issues presented at the administrative hearing involved the District's compliance with IDEA.  See Amended Complaint, Ex. 1, Hearing Officer's Decision, p. 18-21.  Indeed, Plaintiffs concede that the "hearing lasted 35 days and covered nine issues against just one party, the District."  Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint with Regard to Defendants Tri-County & Sheryl Piercy (d/e 58), p. 11.  The Hearing Officer did not consider Tri-County's obligations under the IDEA.  See Amended Complaint, Ex. 1, Hearing Officer's Decision, p. 18-21.  Furthermore, the relief ordered by the Hearing Officer relates solely to the District.  Id. at 21-22.  Plaintiffs argue that Piercy directed the presentation of the District's case and that extensive testimony was presented regarding Tri-County and Piercy.  Plaintiffs further contend that the administrative record exhausts

every plausible argument and defense for Tri-County and Piercy.  However, Plaintiffs themselves recognize that the addition of Tri-County or Piercy as named parties to the administrative hearing "would have generated more motions, objection, and perhaps another lawyer to represent the added party."  <u>Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint with Regard to Defendants Tri-County & Sheryl Piercy</u>, p. 11.  It is clear that the administrative hearing did not fulfill the purposes of exhaustion with respect to Tri-County or Piercy.

Moreover, Plaintiffs' arguments that exhaustion should be excused are unsupported and unavailing.  Plaintiffs suggest that the addition of another party to the administrative hearing would have exceeded the capacity of the state hearing system; however, this suggestion is completely lacking in support.  Similarly, Plaintiffs' argument that the expense resulting from complete exhaustion of administrative remedies would exceed the cost of educating K.A. is irrelevant to the analysis of whether exhaustion would be futile or inadequate.  In Count II, Plaintiffs attack the Hearing Officer's decision and seek additional relief for IDEA violations.  Count II alleges only IDEA violations.  The Hearing Officer has authority to order relief for IDEA violations and exhaustion would not be inadequate.  Clearly, the issue

of Tri-County's obligations under the IDEA was not presented to the Hearing Officer.  Therefore, Tri-County has not had the opportunity to present evidence and arguments on its own behalf on the issue, and there is no exhaustion of administrative remedies with respect to Tri-County. Because Plaintiffs fail to show that an exhaustion exception applies, i.e., that exhaustion would be inadequate or futile, the Count II claims against Tri-County are dismissed.

  2. <u>Count III</u>

Count III alleges that ISBE and Dunn violated the IDEA by: (1) failing to monitor the District and its representatives and (2) failing to properly process Tricia's state complaint to ensure a free public education for K.A.  Count III seeks damages from ISBE for harm resulting from these actions, a declaratory judgment that ISBE failed to properly process the state complaint, and an injunction requiring ISBE to correct its procedures to prevent future violations.  To the extent Plaintiffs are alleging an IDEA claim against Dunn, in his individual capacity, he is not a proper Defendant because the IDEA applies expressly to a "State educational agency, State agency, or local educational agency," and does not apply to employees of these agencies in their individual capacities.  20 U.S.C. § 1415(a); <u>see</u> <u>also</u>

25

Weyrick, 2004 WL 3059793, *7 n.3.

ISBE and Dunn move to dismiss Count III, arguing, among other theories, that the IDEA does not create a private cause of action with respect to the rights allegedly violated.  It is the burden of the party seeking to assert a private right of action to demonstrate that Congress intended to make such a right available.  See Suter v. Artist M., 503 U.S. 347, 363-64 (1992).  Plaintiffs do not even attempt to meet this burden on the failure to monitor theory; therefore, any claims based on that theory are dismissed.

With respect to the claims arising from ISBE's alleged improper processing of Tricia's state complaint, Plaintiffs rely upon a Third Circuit case, Beth V. v. Carroll, in arguing that a private right of action exists.  See Beth V., 87 F.3d 80 (3d Cir. 1996).  In Beth V., the Third Circuit recognized an express private right of action under the IDEA against a state department of education that consistently failed to investigate and timely resolve IDEA complaints.  Id. at 88.  However, even assuming a private cause of action exists under the IDEA with respect to the complaint processing issue, Plaintiffs in the instant case fail to state a claim.

Plaintiffs allege that Tricia submitted the state complaint about the time of the beginning of the due process hearing procedure.  Plaintiffs

concede that some of the issues raised in the state complaint overlapped with issues resolved in the due process hearing.  It is undisputed that Plaintiffs were afforded an extensive due process hearing, and Plaintiffs do not challenge ISBE's conduct in connection with the hearing.  Thus, any issues that were resolved in the due process hearing cannot form the basis for a claim of improper processing of Tricia's complaint.  Furthermore, while Plaintiffs contend that the state complaint contained additional issues distinct from those resolved in the due process hearing, Plaintiffs fail to identify any such issues.  Under the liberal notice pleading standard, a complaint must contain only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (internal quotations and citations omitted); see also Fed. R. Civ. P. 8(a).  Plaintiffs fail to meet even this low threshold in connection with their complaint processing claim.  Defendants are not given fair notice of what Plaintiffs' claim is in this instance.  Plaintiffs' request for an injunction ordering ISBE to correct its procedures to prevent future violations is equally unavailing because Plaintiffs fail to allege that any threat exists that their injury will be

repeated.  Therefore, as set forth above, Plaintiffs fail to state a claim in Count III, and Count III is dismissed.

### 3.  Count IV

In Count IV, Plaintiffs allege that they are entitled to damages from the District under IDEA based on the "excessive and outrageous nature of the violations of FAPE."  Second Amended Complaint ¶ 227.  Plaintiffs further assert that they are entitled to damages from ISBE "for the excessive and outrageous nature of the violations of FAPE that harmed Tricia, K.A., and K.M. by the acts of the District and its representatives, including Tri-County."  Id. ¶ 228.

ISBE moves to dismiss, asserting that the IDEA does not provide either an express or implied private cause of action for damages from the state for IDEA violations by local education agencies.  Once again, Plaintiffs, as the party seeking to assert a private right of action, bear the burden of demonstrating that Congress intended to make such a right available.  See Suter, 503 U.S. at 363-64.  Plaintiffs again make no attempt to meet this burden, and therefore, Count IV is dismissed.

### 4.  Count V

Count V alleges intentional infliction of emotional distress by

Defendant Piercy.  To support a claim for intentional infliction of emotional distress under Illinois law, Plaintiffs must allege that: (1) Piercy's conduct was extreme and outrageous; (2) Piercy either intended that her conduct should inflict severe emotional distress, or knew that there was a high probability that the conduct would cause severe emotional distress; (3) Piercy's conduct in fact caused severe emotional distress.  See Dunn v. City of Elgin, Illinois, 347 F.3d 641, 651 (7th Cir. 2003).  Piercy moves to dismiss, arguing that Plaintiffs fail to allege any conduct that is extreme and outrageous.

Extreme and outrageous conduct for purposes of an intentional infliction of emotional distress claim is characterized as conduct "'so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.'"  Lifton v. Board of Educ. of City of Chicago, 416 F.3d 571, 579-80 (7th Cir. 2005) (quoting Feltmeier v. Feltmeier, 798 N.E.2d 75, 83 (Ill. 2003)).  In the present case, Plaintiffs allege that Piercy, acting outside the scope of her authority as Executive Director of Tri-County, "organiz[ed] parents and residents to attend a public meeting in Lincoln, Illinois to publically attack Tricia and vilify her for challenging her and Tri-County in a due process hearing."  Second

Amended Complaint ¶ 237.  Under the federal notice pleading standard, the Court finds Plaintiffs' allegations in Count V are sufficient to withstand a motion to dismiss.  The Court cannot say, at the pleadings stage, that Plaintiffs could prove no set of facts which would entitle them to relief for intentional infliction of emotional distress.  Piercy's Motion to Dismiss Count V is denied.

### 5.   Count VI

Count VI alleges a violation of 42 U.S.C. § 1983 based on "acts and omissions pursuant to IDEA" and "customs, policies, and practices . . . which violated IDEA."  Second Amended Complaint, ¶¶ 242-43.  Plaintiffs seek "damages for the harm done from these acts and omissions" from the District, Tri-County, and ISBE.  Id., ¶ 270.  Turning first to Plaintiffs' claims against ISBE, it is well-established that § 1983 does not authorize suits against states because states are not "persons" within the meaning of § 1983.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997).  It is undisputed that ISBE is a state agency, and Plaintiffs' § 1983 claims against ISBE alleged in Count VI, therefore, must be dismissed.  Plaintiffs cite Corey H. v. Board of Educ. of City of Chicago to support their position that their claim against ISBE should advance.  See Corey H., 995

F.Supp. 900 (N.D. Ill. 1998).  <u>Corey H.</u> involved claims for injunctive relief against the ISBE as well as its then-Superintendent.  Count VI's prayer for relief makes no mention of Defendant Dunn.  However, even if Count VI could be construed to include claims against Dunn in his official capacity, Plaintiffs fail to state a claim because the only relief they request is money damages.  Official-capacity suits against state officials that seek only injunctive relief are permitted under § 1983 and not forbidden by the Eleventh Amendment; Count IV, however, raises no such claims.  <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 n. 10 (1989); <u>Ex Parte Young</u>, 209 U.S. 123 (1908).  <u>Corey H.</u>, which involved claims for declaratory and injunctive relief, is distinguishable from the present case which involves only money damages.  Moreover, Count VI is devoid of allegations which could support a § 1983 claim against Dunn in his individual capacity.  Plaintiffs' § 1983 claims against ISBE, and any claims that could be inferred with respect to Defendant Dunn, in Count VI are dismissed.

Count VI also asserts § 1983 equal protection and due process claims against Tri-County and Piercy.  Tri-County and Piercy argue that these claims should be dismissed: (1) based on Plaintiffs' failure to exhaust

administrative remedies under the IDEA and (2) because they fail to state

a claim.  Turning first to the question of exhaustion, the Seventh Circuit has

recognized that § 1983 claims are subject to IDEA's exhaustion requirement

if the plaintiff is seeking relief that is available under IDEA.  See Charlie F.

v. Board of Educ. of Skokie Sch. Dist. No. 68, 98 F.3d 989, 991 (7th Cir.

1996).   The IDEA covers matters relating to the provision of a free

appropriate public education.   20 U.S.C. § 1415.   The IDEA section

relevant to the exhaustion issue provides:

> Nothing in this chapter shall be construed to restrict or limit the
> rights, procedures, and remedies available under the
> Constitution, the Americans with Disabilities Act of 1990, title
> V of the Rehabilitation Act of 1973, or other Federal laws
> protecting the rights of children with disabilities, except that
> before the filing of a civil action under such laws seeking relief
> that is also available under this subchapter, the procedures
> under subsections (f) and (g) of this section shall be exhausted
> to the same extent as would be required had the action been
> brought under this subchapter.

20 U.S.C. § 1415(1).  As discussed in § B.1. above, Plaintiffs did not

exhaust the administrative remedies available under IDEA with respect to

Tri-County and Piercy.  Thus, if the relief sought under § 1983 is available

under IDEA, Plaintiffs' claims must be dismissed.

Turning to an examination of the allegations of Count VI, the Court

concludes that Count VI raises claims that are non-educational in nature. As discussed below, Count VI alleges harm separate and apart from the provision of a free appropriate public education. Additionally, Count VI seeks damages for past harm, not prospective relief. The damage alleged by Plaintiffs in Count VI, if proven, cannot be remedied by services available under IDEA. Therefore, because the relief sought in Count VI is not available under IDEA, Plaintiffs were not required to exhaust administrative remedies with respect to these claims, and the Court turns to an analysis of the sufficiency of the allegation.

Turning first to the equal protection claims, Plaintiffs rely on a "class of one" equal protection theory. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The Seventh Circuit has recognized that a person may state a claim under a "class of one" theory where the plaintiff alleges: (1) that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant. See McDonald v. Village of Winnetka, 371 F.3d 992, 1001-02 (7th Cir. 2004); Nevel v. Village of Schaumburg, 297 F.3d 673, 681 (7th Cir. 2002).

With respect to Piercy, in her individual capacity, Defendants correctly assert the general rule that § 1983 does not impose respondeat superior liability. See, e.g., Kramer v. Village of North Fond du Lac, 384 F.3d 856, 866 (7th Cir. 2004). "Section 1983 imposes personal liability when an individual, acting under color of law, deprives another individual of his Constitutional rights." Id. Piercy argues that Plaintiffs fail to allege sufficient personal involvement by Piercy to state an individual capacity claim against her. The Court, however, finds that Plaintiffs allege sufficient misconduct by Piercy personally to state an equal protection claim against her individually. Plaintiffs allege that Piercy intentionally treated Plaintiffs differently than others who were similarly situated. Plaintiffs specifically allege that Piercy took action against Plaintiffs on several instances and stated that she intended to retaliate against Tricia. Piercy's Motion to Dismiss Plaintiffs' equal protection claims against her in her individual capacity is denied.

Similarly, Plaintiffs have sufficiently alleged facts that would support an equal protection claim against Tri-County. In order to establish liability against Tri-County under § 1983, Plaintiffs must show that: (1) they suffered a deprivation of a federal right, here the right to equal protection;

(2) as a result of either an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for Tri-County; which (3) was the proximate cause of their injury.  See Ovadal v. City of Madison, Wisconsin, 416 F.3d 531, 535 (7th Cir. 2005).  Plaintiffs allege that Piercy deliberately acted to deprive them of their rights and intentionally treated Plaintiffs differently than others who were similarly situated, based on an illegitimate animus.  Plaintiffs further allege that Piercy is the Executive Director of Tri-County and the person responsible for its administration.  These facts, if true, are sufficient to support an equal protection claim against Tri-County.  Tri-County's Motion to Dismiss Plaintiffs' § 1983 equal protection claims against it is denied.

Plaintiffs' due process § 1983 claims against Piercy and Tri-County do not fare as well.  To prevail on a procedural due process claim, Plaintiffs "must demonstrate (1) that the defendants deprived them of a property interest and (2) that the deprivation occurred without due process of law." Brooks v. University of Wisconsin Bd. of Regents, 406 F.3d 476, 481 (7th Cir. 2005).  Plaintiffs claim a protected property interest in the public education of K.A. and K.M.  The Second Amended Complaint, however, is devoid of allegations that Plaintiffs received constitutionally insufficient

process, an essential element of a procedural due process claim.  In fact, when Tricia requested a due process hearing in connection with K.A.'s FAPE, she was afforded an extensive hearing, after which she prevailed on the majority of her claims.  Therefore, the allegations of the Complaint, even if true, are insufficient to establish a procedural due process claim against either Piercy or Tri-County.

To the extent Plaintiffs allege substantive due process claims, they fail to state a claim as well.  The Seventh Circuit has characterized substantive due process as "among the stingiest of constitutional protections."  Kramer, 384 F.3d at 865.  The scope of substantive due process is very limited and protects plaintiffs only against arbitrary government action that shocks the conscience.  Montgomery v. Stefaniak, 410 F.3d 933, 939 (7th Cir. 2005). When, as here, a plaintiff focuses on specific acts of a government official, only the most egregious conduct is arbitrary in the Constitutional sense. Dunn v. Fairfield Community High Sch. Dist. No. 225, 158 F.3d 962, 965 (7th Cir. 1998).  Piercy and Tri-County assert that the allegations of the Second Amended Complaint are insufficient to meet this standard.  The Court agrees.  Plaintiffs allege: (1) that Tri-County staff refused to meet with Tricia during "non-working hours," (2) that Piercy sat silently in a

meeting when the District's attorney attempted to intimidate Tricia into abandoning the due process hearing by stating "I'll get $50,000 and you won't get shit," and (3) that Piercy stated on one occasion that she intended to retaliate against Tricia.  Second Amended Complaint, ¶¶ 143, 246, 249, & 266.  None of these allegations, if true, reach the threshold required for a substantive due process claim.  Piercy and Tri-County's Motion to Dismiss Plaintiffs' substantive due process claims is allowed.

      6.   <u>Count VII</u>

In Count VII, Plaintiffs allege violations of § 504 and the ADA.  After dismissing the District and Climer, Plaintiffs seek damages from Tri-County, Piercy, ISBE, and Dunn and declaratory and injunctive relief.  To the extent Plaintiffs allege § 504 or ADA claims against Piercy and Dunn, in their individual capacities, those claims must be dismissed.  Section 504 applies to programs or activities that receive federal financial assistance.  29 U.S.C. § 794.  "Employees of the recipients of federal financial assistance are not in themselves the recipients of such assistance."  <u>Grzan v. Charter Hosp. of Northwest Indiana</u>, 104 F.3d 116, 120 (7th Cir. 1997).  Plaintiffs do not allege that Piercy or Dunn were recipients of federal funds, and their § 504 claims against Piercy and Dunn, in their individual capacities, are dismissed.

Similarly, Title II of the ADA protects individuals from discrimination by a "public entity." 42 U.S.C. § 12132. Neither Piercy nor Dunn fit this definition, and Plaintiffs' ADA claims against Piercy and Dunn, in their individual capacities, are dismissed. To the extent Plaintiffs are seeking relief from Piercy and Dunn, in their official capacities, in Count VII, these claims are dismissed as redundant to the claims raised against Tri-County and ISBE. See Kerry M., 2004 WL 2538303, *5 (citing cases).

Thus, the Court turns to an examination of the Count VII claims against Tri-County and ISBE. Section 504 and ADA claims are subject to IDEA's exhaustion requirement if the plaintiff is seeking relief that is available under IDEA. See Charlie F., 98 F.3d at 991; 20 U.S.C. § 1415(1). As discussed above, Plaintiffs did not exhaust the administrative remedies available under IDEA with respect to Tri-County and Piercy. Similarly, the Court finds that Plaintiffs failed to exhaust administrative remedies with respect to ISBE. In Count VII, Plaintiffs are not challenging the Hearing Officer's decision or the ISBE's handling of the administrative process. Instead, Plaintiffs seek to hold ISBE liable for shortcomings of the District, Tri-County, Piercy, and Attorney Guenther as set forth in the Hearing Officer's opinion. Second Amended Complaint, ¶¶ 277-279. However,

neither the ISBE nor Dunn were named parties to the administrative proceeding.  See Amended Complaint, Ex. 1, Hearing Officer's Decision, p. 1.  The Hearing Officer did not consider any complaints against ISBE or analyze ISBE's obligations under the IDEA.  Id. at 18-21.  Furthermore, the relief ordered by the Hearing Officer relates solely to the District.  Id. at 21-22.  Plaintiffs, thus, failed to exhaust administrative remedies with respect to ISBE with respect to the claims raised in Count VII.  Moreover, there is nothing to support a conclusion that exhaustion against ISBE would be futile or inadequate, such that exhaustion would be excused.  See Honig, 484 U.S. at 326-27.

Therefore, if the relief sought in Count VII is available under the IDEA, Plaintiffs' claims against Tri-County and ISBE must be dismissed for failure to exhaust administrative remedies.  In Count VII, Plaintiffs seek to hold ISBE and Tri-County liable for money damages based on shortcomings of the District, Tri-County, Piercy, and Guenther as set forth in the Hearing Officer's opinion.  Plaintiffs also seek declaratory relief and an injunction to prevent the type of harm alleged from recurring to Plaintiffs or others.  "'Where . . . a plaintiff has alleged injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the

courts should require exhaustion of administrative remedies.'" <u>McCormick</u>
<u>v. Waukegan Sch. Dist. # 60</u>, 374 F.3d 564, 568 (7th Cir. 2004) (<u>quoting</u>
<u>Robb v. Bethel Sch. Dist.</u>, 308 F.3d 1047, 1054 (9th Cir. 2002)).  With
respect to the injunctive relief sought in Count VII, the IDEA expressly
allows a hearing officer to order a local educational agency to comply with
the statute's procedural requirement.  <u>See</u> 20 U.S.C. § 1415(f)(3)(E)(iii).
Therefore, at least a portion of the relief sought in Count VII is clearly
available under the IDEA.  Additionally, Plaintiffs' Count VII factual
allegations are within the scope of the IDEA; indeed, they were the subject
of the administrative hearing.  Tricia and K.A. prevailed in large part at the
hearing, and relief was ordered.  Tri-County and ISBE, however, were not
parties to that hearing, and therefore, the Hearing Officer did not order any
relief against them.  Because relief for the allegations of Count VII is
theoretically available under the IDEA, the ADA and § 504 claims against
ISBE and Tri-County are dismissed for failure to exhaust administrative
remedies.

### 7.   <u>Count VIII</u>

In Count VIII, Plaintiffs allege a state law abuse of process claim
against Piercy.  "Abuse of process is the misuse of legal process to

accomplish some purpose outside the scope of the process itself."
Neurosurgery and Spine Surgery, S.C. v. Goldman, 790 N.E.2d 925, 929
(Ill. App. 2d Dist. 2003). "The two distinct elements of an abuse of process
claim are: (1) the existence of an ulterior purpose or motive and (2) some
act in the use of process that is not proper in the regular course of
proceedings." Id. The tort of abuse of process is not favored under Illinois
law, thus its elements must be strictly construed. Id. at 929-30.

Plaintiffs hinge their claims on alleged abuses relating to the due
process proceeding. Assuming that the abuse of process tort applies to the
administrative proceeding at issue here, Plaintiffs, nevertheless, fail to state
a claim. "In order to satisfy the first element, a plaintiff must plead facts
that show that the defendant instituted proceedings against him for an
improper purpose, such as extortion, intimidation, or embarrassment."
Neurosurgery and Spine Surgery, 790 N.E.2d at 930. As the allegations of
the Second Amended Complaint make clear, the District, not Piercy,
initially requested the due process hearing. Second Amended Complaint,
¶¶ 101, 287-88. Furthermore, the District's request was subsequently
withdrawn, and the administrative hearing proceeded only on Tricia's cross-
request for a hearing. Id., ¶¶ 102-03. Additionally, neither Piercy nor Tri-

County were parties to the administrative hearing.  Turning to the second element, Plaintiffs allege that Piercy arranged for the District's request for a hearing to be withdrawn, needlessly lengthened the number of hearing days, demanded that the hearing be held in Belleville, Illinois, and sought additional evaluation of K.A.  None of these allegations, however, constitute improper use of process in the regular course of proceedings.  Count VIII is dismissed.

CONCLUSION

For the reasons set forth above, the Motion to Dismiss Plaintiffs' Second Amended Complaint with Regard to Defendants Tri-County Special Education Association and Sheryl Piercy (d/e 50) is ALLOWED, in part, and DENIED, in part.  Plaintiffs' claims against Tri-County and Piercy alleged in Counts I, II, and VII are dismissed.  The due process claims against Tri-County and Piercy set out in Count VI are dismissed. The abuse of process claim against Piercy (Count VIII) is dismissed.  The Motion is denied in all other respects.  Defendants' Illinois State Board of Education and Randy Dunn's Motion to Dismiss (d/e 52) is ALLOWED.  All claims against the Illinois State Board of Education and Randy Dunn are dismissed.

Upon request of the parties, this Court stayed discovery and all subsequent deadlines pending resolution of the instant Motions to Dismiss. That stay is now lifted.  The parties have filed a Joint Proposed Scheduling Order (d/e 62) which the Court now adopts.

IT IS THEREFORE SO ORDERED.

ENTER:   November 3, 2005.

FOR THE COURT:

_____s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE