## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TRICIA C., individually, and as the | ) | |
| Parent and Next Friend of K.A. | ) | |
| and K.M., minors, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  04-3172 |
| | ) | |
| TRI-COUNTY SPECIAL | ) | |
| EDUCATION ASSOCIATION | ) | |
| and SHERYL A. PIERCY, | ) | |
| individually and in her official | ) | |
| capacity as Executive Director of | ) | |
| Tri-County Special Education | ) | |
| Association, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants Tri-County

Special Education Association (Tri-County) and Sheryl A. Piercy's (Piercy)

Motion to Strike Affidavit of Tricia C. (d/e 85) and Motion for Summary

Judgment (d/e 74).[1]  Plaintiffs filed an eight-count Second Amended

---

[1]The Court notes that Plaintiffs have not yet filed a response to the Defendants' Motion to Strike, and so the Court assumes that Plaintiffs have no objection to the Motion.  CDIL Local Rule § 7.1(B)(2)

Complaint (d/e 43) raising various federal and state law violations.  In a decision dated November 4, 2005, this Court dismissed all claims except the Plaintiffs' equal protection claims, pursuant to 42 U.S.C. § 1983 against Tri-County and Piercy (Count VI), and the intentional infliction of emotional distress claim against Defendant Piercy (Count V).  For the reasons set forth below, Defendants' Motion to Strike Affidavit of Tricia C. is ALLOWED, in part, and DENIED, in part.  Defendants' Motion for Summary Judgment is ALLOWED.

I.    DEFENDANTS' MOTION TO STRIKE AFFIDAVIT OF TRICIA C.

Defendants move to strike statements contained in the Affidavit of Tricia C., based on various deficiencies.  Specifically, Defendants move to strike ¶¶ 2, 3, 7, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 43, 44, 45, 46, because they contain contradictory, self-serving, or hearsay statements.

Defendants move to strike ¶¶ 10, 13-19, and 43-46, based on the fact that those paragraphs contain statements that directly contradict Tricia C.'s prior deposition testimony.[2]  Federal Rule of Civil Procedure 56(e)

---

[2]Paragraphs 10, 13-19, 43-46 of Tricia C.'s Affidavit provide as follows:
10.    When I began attending District # 92 Board meetings during 2000,

2

I met Lois Laughlin and Tina Snyder before the District filed a due process request against me.  Ms. Laughlin and Ms. Snyder both have a child with disabilities in special education for whom Tri-County and Piercy scheduled and conducted meetings.  Their children attended District #92.  Ms. Snyder worked during the day at H&R Block in Lincoln, IL, just like I worked during the day.  Ms. Laughlin worked in her home day care center in Lincoln, Il, just like I worked during the day.  Both are prepared to testify at trial.

13.    I now recall that Ms. Laughlin and Ms. Snyder were treated differently than me in several respects by Tri-County and Piercy.

14.    Both Ms. Laughlin and Ms. Snyder told me they [were] attempting to get appropriate services for [their children] just like I was for K.A., and that Tri-County was doing the technical work for the District for their children too, including evaluations and scheduling and conducti[ng] meetings.

15.    Tri-County and Piercy treated both Ms. Laughlin and Ms. Snyder differently regarding the scheduling of Meetings for their children with disabilities, and Tri-County and Piercy did not require them to attend as many meetings as I was required to attend for K.A.

16.    Both Ms. Laughlin and Ms. Snyder were never excluded from meetings about their children when they could not make a proposed or previously scheduled meeting time, like I was excluded by Tri-County and Piercy.

17.    Both Ms. Laughlin and Ms. Snyder told me they had one to two meetings per year to discuss issues of special education services with Tri-County and Piercy, however, I had to attend about 5 meetings with Tri-County and Piercy per year, including 3 [Individualized Education Program] Meetings per year, during the school years of 2001-2002, 2002-2003, 2003-2004.

18.    I have reviewed the list of meetings submitted by District #92 with their Post Hearing Brief and it does not list all of the meetings I attended with Tri-County and Piercy or that they scheduled, such as the evaluation meeting with Dr. Michael Kent on 2/21/01.

19.    Both Ms. Laughlin and Ms. Snyder indicated to me that they had no problems getting Tri-County and Piercy to reschedule meetings when there was an emergency or serious reason for changing the meeting times.

43.    I discussed this incident with Ms. Snyder who was appalled and thought it was outrageous and had never had such threats made to her by anyone, including Tri-County and Piercy.

44.    Neither Ms. Laughlin nor Ms. Snyder reported any harassment, public attacks or surveillance of their activities by Tri-County or Piercy, even though they demanded better services from Tri-County for their

requires that an affidavit be made on personal knowledge, set forth facts admissible in evidence, and demonstrate that the affiant is competent to testify to the matters set forth in the affidavit.  Moreover, "[a] plaintiff cannot . . . create an issue of material fact by submitting an affidavit that contradicts an earlier deposition.  When a conflict arises between a plaintiff's sworn testimony and a later affidavit or declaration, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy."  Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 759 (7th Cir. 2006) (quoting Piscione v. Ernst & Young, LLP, 171 F.3d 527, 532-33 (7th Cir. 1999)) (internal quotations and citations omitted).

---

children with disabilities like I did.

45.    Both Ms. Laughlin and Ms. Snyder were involved in various meetings where services were negotiated with Tri-County and Piercy regarding their children with disabilities, but they were not threatened in such negotiations.

46.    The use of Atty. Guenther in negotiations regarding K.A. and Guenther's threat to me, and Tri-County and Piercy's adoption of the threat by silence constituted different treatment than that of Ms. Laughlin and Ms. Snyder when they negotiated for services from Tri-County for their children with disabilities.

Plaintiffs' Response to Defendants' Motion for Summary Judgment (d/e 86) (Plaintiffs' Response), Ex. 1, Affidavit of Tricia C. (Tricia C.'s Aff.), ¶¶ 10, 13-19, 43-46.

Tricia C. testified at her deposition that she was not aware of any other similarly situated parents who received more favorable treatment from Tri-County.  However, she now states in her Affidavit that she remembers two parents, namely Tina Snyder and Lois Laughlin, who were similarly situated to her but were intentionally treated differently.  Tricia C. claims that she now remembers details that she did not recall before as she has "refreshed her recollection" by reviewing transcripts of the due process hearing.  In viewing the facts in the light most favorable to the Plaintiffs, the Court finds that Tricia C.'s reasons are plausible as she has alleged that she had a lapse of memory.  Even so, however, Tricia C.'s Affidavit statements relating to what Laughlin and Snyder allegedly told her regarding how they were treated by Tri-County and Piercy must nevertheless be stricken because such statements are inadmissible hearsay statements and not within any recognized hearsay exception.[3]  As such, ¶¶ 10, 13-19, and 43-46 are

---

[3]The Court notes that Tricia C. has not submitted any affidavit from Snyder or Laughlin substantiating her assertions regarding the purported statements of the two individuals.  The only evidence submitted in support of Tricia C.'s assertion is an excerpt of Snyder's testimony at the administrative hearing.  The only information the Court can gather from this testimony is that: (1) a group of parents, including Snyder herself, Tricia C. and Laughlin, met with the school board to voice their concerns about learning disability (LD) procedures at the District, (2) all of Snyder's three sons attended West Lincoln Broadwell Elementary School District No. 92, (3) one of Snyder's sons attended District No. 92 approximately around the same time that K.A. was enrolled in District No. 92, and (4) that based on Snyder's experience, she did not find the special education

stricken.  <u>See</u> <u>Plaintiffs' Response</u>, Ex. 1, <u>Tricia C. Aff.</u>

Similarly, Defendants move to strike ¶ 7, because the paragraph contradicts Tricia C.'s prior deposition testimony.  Paragraph 7 states: "I did lose my job due to taking excess time off of work for the long evaluations and meetings scheduled during the day time on week days only by Tri-County." <u>Tricia C. Aff.</u>, ¶ 7.  This statement directly contradicts Tricia C.'s deposition testimony in which she admitted that she was fired because she purportedly failed to submit a requested physician statement to her employer on or before April 8, 2002.  <u>Appendix to Defendants' Statement of Undisputed Facts (d/e 78) (Defendants' Appendix)</u>, Ex. 2, <u>Deposition of Tricia C. (Tricia C. Dep.</u>) at 32.  As such, ¶ 7 is stricken.

Defendants further move to strike ¶¶ 2, 3, 11, 20 and 26 also on the bases that these paragraphs contain statements that contradict Tricia C.'s prior deposition testimony in which she testified that Tri-County and Piercy rescheduled several meetings at her request and that the paragraphs contain statements concerning alleged violations that occurred outside the two-year

---

program at District No. 92 to be adequate.  <u>Plaintiffs' Response</u>, Ex. 13, <u>Excerpt of Tina Snyder's Testimony at the Administrative Hearing held 2/18/03</u> at 2716-18.  This testimony is not enough to support Tricia C.'s statements in her Affidavit concerning what Snyder told her.

statute of limitations for § 1983 actions.  See Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment (d/e 84) at 3. Paragraph 2 provides:

> I experienced a pattern and practice of repetitive meetings called and/or conducted by Tri-County and Piercy during the day time during week days only, and I requested meetings to be scheduled at times that didn't conflict with my work and sleep schedule. I made these requests to Tri-County and Piercy individually because Tri-County handled the scheduling of meetings for K.A. and Tri-County and Piercy individually conducted the Meetings for K.A., except where they scheduled an outside evaluator to meet with K.A. and I.

Tricia C. Aff., ¶ 2.  Defendants fail to identify the portion of Tricia C.'s deposition testimony upon which they rely, and the Court finds that there is nothing in the record supporting Defendants' assertion that Tricia C. testified that Tri-County rescheduled several meetings at her request.  As such, the Court will not strike the above paragraph because even if Tricia C. made such a statement at her deposition, the statement is not contradictory to her alleged testimony; the statement in ¶ 2 is merely a broad statement regarding Tricia C.'s experience with Tri-County and Piercy in scheduling meetings.[4]

---

[4]This broad statement does not contradict Tricia C.'s alleged deposition testimony because even though it could be true that Tri-County rescheduled a few meetings at Tricia C.'s request, it could equally be true that out of all the meetings scheduled for

Paragraph 3 provides:

> I know that Tri-County conducted meetings only during the day
> time on weekdays as a habitual practice or a repeated course of
> action, and did so even when I requested different scheduling for
> at least 5 [Individualized Education Program]  Meetings,
> including the one on 5/21/01.

Tricia C. Aff., ¶ 3.  For similar reasons, the Court will not strike ¶ 3.

However, the Court will disregard the statement that Tri-County failed to

reschedule an Individualized Education Program (IEP) meeting on May 21,

2001, because such claim of violation is outside the two-year statute of

limitations period for § 1983 actions, as discussed infra.

Paragraph 11 provides:

> I had about 20 meetings for K.A. that Tri-County scheduled
> during day time on week days.  The repeated refusal of Tri-
> County to schedule meetings at times when I was not working
> and not required to sleep caused me to take off excess time from
> work and lose my job at Cutler-Hammer.

Tricia C. Aff., ¶ 11.  To the extent that Tricia C. states that she lost her job

because she took excessive leaves of absence to attend meetings scheduled

and conducted by Tri-County, the Court will disregard that portion of ¶ 11

because it contradicts Tricia C.'s prior deposition testimony.  Tricia C.

---

K.A., Tri-County could have refused to reschedule an overwhelming majority of the
meetings, which would not be contradictory to Tricia C.'s alleged testimony.

admitted at her deposition that she was fired because she failed to submit

a requested physician's statement excusing her from work.

Paragraph 20 provides:

> Tri-County and Piercy refused to reschedule about six IEP
> Meetings and conducted them without me after I revoked my
> consent for evaluations of K.A. by Tri-County after K.A. got sick
> from Risperdol. Tri-County and Piercy had recommended that
> she take K.A. for an evaluation by Dr. Kent. Charlene Trappe-
> Black, a psychologist at Tri-County, told me at a meeting on
> 11/3/00 that Dr. Kent would conduct a psychological evaluation
> for K.A.

Tricia C. Aff., ¶ 20. Defendants move to strike the above statement based

on the fact that Tricia C. admitted at her deposition that Tri-County and

Piercy rescheduled several meetings, but now makes contrary claims.

However, the above statement is not contradictory because Tricia C. is

merely making a statement regarding how many times Tri-County refused

to reschedule meetings.

Paragraph 26 states: "The day time during week days only meeting

requirement of Tri-County and Piercy caused me to lose pay for work time

taken off to attend the meetings and evaluations for K.A. and that this

harmed us by reducing our limited income and ultimately causing me to lose

my job." Tricia C. Aff., ¶ 26. Again, to the extent that Tricia C. states that

she lost her job because of Tri-County and Piercy, the Court will disregard that portion of the statement.

Defendants move to strike ¶¶ 23, 24, 25, and 27 because they contain statements regarding alleged wrongful acts that occurred outside the scope of the two-year statute of limitations for § 1983 suits. "Section 1983 does not contain an express statute of limitations. In order to determine the proper statute of limitations for § 1983 actions, a federal court must adopt the forum state's statute of limitations for personal injury claims. [The Seventh Circuit] has consistently held that the appropriate statute of limitations for § 1983 cases filed in Illinois is two years as set forth in 735 ILCS § 5/13-202." Ashafa v. City of Chicago, 146 F.3d 459, 461 (7th Cir. 1998) (internal citations omitted) (citing cases).

In an effort to defeat Defendants' Motion for Summary Judgment on the §1983 equal protection claim, the Plaintiffs argue that Tri-County and Piercy deprived them of their rights guaranteed under the Individuals with Disabilities and Education Act (IDEA) by repeatedly failing to reschedule IEP meetings. To support the Plaintiffs' assertions, Tricia C. has submitted her Affidavit which contains statements that relate to the Defendants' refusal to reschedule the IEP meetings held on March 1, 2001, and May 21,

2001, when Tricia C. made such requests.  These alleged violations cannot support the Plaintiffs' equal protection claims because they relate to incidents that occurred outside the two-year statute of limitations period. Plaintiffs filed this suit on August 6, 2004.  As such, to support their § 1983 equal protection violation claims, the Plaintiffs can only assert violations dating from August 6, 2002, until August 6, 2004.  The Court thus strikes ¶¶ 23, 24, and 25.[5]

The Court, however, denies Defendants' request with respect to ¶ 27. Paragraph 27 provides, "On 1/22/02, I told Lois Lee that I requested the then-scheduled IEP Meeting to be delayed until I received a needed evaluation report that Dr. Rudy Lorber had produced, and she relayed that information to Piercy over the phone in my presence."  Tricia C. Aff., ¶ 27.

_____

[5]Paragraphs 23, 24 and 25 provide:
23.    The IEP Meeting on 3/1/01 is an example of the instances in which Tri-County conducted important meetings without me instead of rescheduling them to times I could attend because it would not interfere with my job and the sleep I needed.
24.    Immediately after this meeting, a due process hearing request was filed on me and K.A., and this shows the way in which Tri-County and Piercy used their practice of scheduling meetings to harm me and K.A.
25.    At the 5/21/01 IEP Meeting, I made a brief appearance to register my objection to the scheduling of this meeting by Tri-County and Piercy, and then left because I could not stay.  My friend stayed and tape recorded the meeting for the first time so that I would know what Tri-County and Piercy did and said about K.A. without my presence.
Tricia C.'s Aff., ¶¶ 23-25.

Although the January 22, 2002, meeting is not within the statute of limitations period, the Court denies the Defendants' request because this statement relating to the January 22, 2002, meeting is not relied upon by the Plaintiffs to support their contention that Tri-County and Piercy refused to reschedule meetings.

II.    <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

<u>STATEMENT OF FACTS</u>

Plaintiff Tricia C. is the mother of minors K.A. and K.M.  K.A. is an eight-grade student with learning disabilities.  Because of his learning disabilities, K.A. is eligible for special education services under the IDEA, 20 U.S.C. § 1400 <u>et</u> <u>seq</u>.  At all relevant times, Plaintiffs resided within the West Lincoln-Broadwell Elementary School District No. 92 (the District), and K.A. was previously a student of the District, but currently is a student of a school district in Braidwood, Illinois.  K.A. attends Acacia Academy, a private school for students with disabilities.  K.M. is K.A.'s older sister and is a regular high school student.  Defendant Tri-County is a local education agency under the Illinois School Code located in Bloomington, Illinois.  Tri-County, a special education cooperative, provides special education services to member school districts that have difficulty efficiently providing such

services to their students.   Under Illinois law, a special education cooperative, like Tri-County, is an entity that is separate from a district and is created by a joint agreement between school boards.   105 ILCS §5/10-22.31.   Tri-County serves many school districts in McLean, Dewitt, and Logan (Illinois) Counties, including the District.   Defendant Sheryl A. Piercy is the Executive Director of Tri-County.

In the fall of 1996, K.A. enrolled in the District's kindergarten program.  Shortly after the school year began, K.A.'s teacher began to notice that K.A. had weaknesses in certain areas.   In February 2001, Tricia C. made a written request to the District for an Independent Educational Evaluation (IEE) of K.A. to determine the reasons for his learning disabilities.  In March 2001, the District requested a due process hearing to dispute Tricia C.'s request for an IEE.  In response, Tricia C. counter-filed for a hearing, raising nine additional issues against the District.  On August 24, 2001, the District and Tricia C. participated in mediation with an Illinois State Board of Education (ISBE) mediator.   Tricia C. and the District signed a Mediation Agreement that provided K.A. would be evaluated by a psychologist and a psychiatrist.  Specifically, the mediation agreement provided:

The parent and the school agree that an independent evaluation will be conducted with [K.A.] by doctors [David] Berland and [Frederic] Golden.  Both parties agree that they will do all in their power to expedite this evaluation.  In the interim period between now, the evaluation and the evaluation report, [K.A.] will be placed in the Central School BD [behavior disorder] program with an aide.  The parent and the district agree to reconsider the interim placement upon receipt of one or both evaluations.

Defendants' Appendix, Ex. 1, Mediation Agreement dated 8/24/01.

Neither Piercy nor Tri-County was a party to or signed the Mediation Agreement.  Plaintiffs, however, state that Tri-County and Piercy played an important role in drafting the Agreement and implementing the terms of the Agreement.  In accordance with the Mediation Agreement, Dr. Berland, a psychiatrist, evaluated K.A. and determined that K.A. had a learning disability, but was not behavior disordered.  Defendants' Appendix, Ex. 12, Dr. Berland's Evaluation Report.  Following Dr. Berland's evaluation, Tricia C. felt that it was unnecessary to wait for Dr. Golden's evaluation, but the District insisted on waiting for Dr. Golden's report.  The ISBE accused the District of breaching the Mediation Agreement and acting in bad faith.

Beginning in October of 2001, Tricia C. took leaves of absence from her employer, Cutler-Hammer, due to stress arising from her dispute with

the District.  The leave lasted until March 2002.  Tricia C. Dep. at 17.  Dr.

Golden completed his evaluation of K.A. on or about November 20, 2001.[6]

Following Dr. Golden's assessment of K.A., a meeting to reconsider K.A.'s

interim placement was scheduled.   Tricia C. testified that Tri-County

scheduled IEP meeting dates without first conferring with the parents and

notified the parents of the scheduled dates in writing.  Id. at 49-50.  At her

deposition, Tricia C. testified that she was not aware of others similarly

situated who were treated more favorably by Tri-County and Piercy with

respect to the scheduling of IEP meetings.  Id. at 51-52.

Upon the completion of Drs. Berland and Golden's evaluations of

K.A., the District scheduled an IEP meeting on December 6, 2001, to

reconsider K.A.'s interim placement.  At the request of Tricia C.'s attorney,

the December 6, 2001, meeting was cancelled and rescheduled for January

22, 2002, with the agreement of Tricia C.  On January 21, 2002, Tricia C.

called Special Education Coordinator for District 27, Lois Lee, to request

that the IEP meeting scheduled for January 22, 2002, be cancelled.  Tricia

C. made the request because she had obtained an outside evaluation from

Dr. Rudy Lorber and had not received the report which she wished to

---

[6]The record does not provide the results of Dr. Golden's assessment of K.A.

submit on the issue of K.A.'s interim placement.[7] <u>Defendants' Appendix</u>, Ex. 5, <u>Lois Lee's letter dated 1/22/02</u>.  On January 22, 2002, Lee notified appropriate individuals of the cancellation, including Piercy.  <u>Id.</u>; <u>Tricia C.'s Aff.</u>, ¶ 27.

Casey Huff, former secretary at Tri-County, testified at the administrative hearing that she was in the same room with Piercy after she got off the phone with Lee.  Huff testified that sometime after Piercy got off the phone with Lee, she heard Piercy make the following statement: "Tricia C[] is going to eat Tri-County's dust.  We've sucked enough . . . I can't believe I just said that.  I told Lois I was going to be the sane one in this." <u>Plaintiffs' Response</u>, Ex. 8, <u>Excerpt of Casey Huff's Testimony at the Administrative Hearing held 2/18/03</u> at 2763-64; <u>Tricia C. Aff.</u>, ¶ 28.  Huff further testified that she understood Piercy's statement to mean that "Tri-County was going to come out ahead[]" and that "the other people that were involved were not sane and that [Piercy] considered herself the sane one."[8] <u>Casey Huff's Testimony at the Administrative Hearing held 2/18/03</u>,

---

[7]Tricia C. obtained an independent evaluation from Dr. Lorber because she felt that Tri-County and Piercy were blaming her for causing K.A.'s behavioral problems and because she believed that they had failed to properly evaluate K.A.

[8]Huff further testified that at the administrative hearing she resigned from Tri-County in May 2002 because of "an unbearable work relationship" with Piercy.

at 2764.

The January 22, 2002, meeting was thus cancelled at the request of Tricia C.  and rescheduled for February 26, 2002.  On February 26, 2002, an IEP meeting was held to reconsider K.A.'s interim placement pursuant to the Mediation Agreement, during which time a temporary education plan was developed for K.A. kept in the Central School Behavior Disorder classroom consistent with Dr. Golden's recommendations.  <u>Defendants'</u> <u>Appendix</u>, Ex. 6, <u>IEP dated 2/26/02</u> and <u>Plaintiffs' Response to Defendants'</u> <u>Undisputed Material Facts # 16</u>.

In a letter dated April 1, 2002, Cutler-Hammer requested Tricia C. to submit, by April 8, 2002, an additional physician's statement excusing her from work effective March 29, 2002, if she wished to extend her leave. <u>Defendants' Appendix</u>, Ex. 15, <u>Cutler-Hammer letter dated 4/1/2002</u>.  The letter stated:

> When on medical leave of absence, we need an additional physician's statement diagnosing your condition every 30 days. The most recent physician's slip we have on file for you is effective 2-28-02 and excuses you from work thru 3-28-02.

---

<u>Defendants' Appendix</u>, Ex. 14, <u>Excerpt of Casey Huff's Testimony at the Administrative</u> <u>Hearing held 2/18/03</u>, at 2758, 2782.  Huff also testified that she was not aware of any parents who were retaliated against by Tri-County because they advocated for their child. <u>Id.</u> 2758-59.

Therefore, we need a physician's statement excusing you from work effective March 29, 2002.

Please send a physician's statement diagnosing your condition to the plant nurse by Monday, April 8, 2002.  If we do not receive a physician's statement by Monday, April 8, 2002 you will be considered to have voluntarily terminated your employment.

If you have any questions, please do not hesitate to contact the human resources office.

Id.

Tricia C. testified in her deposition that in response to the letter, her boyfriend Walt Crabtree submitted a physician's statement prior to April 8, 2002.  Tricia C. Dep. at 31.  Despite this alleged submission, by a letter dated April 8, 2002, Cutler-Hammer informed Tricia C. that her employment was terminated due to her failure to provide the additional physician's statement, as requested in the April 1, 2002, letter.  Defendants' Appendix, Ex. 16, Cutler-Hammer letter dated 4/08/02.  Tricia C. admitted in her deposition that the stated reason for her discharge was that she failed to submit the requested physician's statement, but she also indicated in her deposition that she ultimately lost her job because "[she] was on medical leave for too long."  Tricia C. Dep., at 32, 61.  Upon the notification of her dismissal, Tricia C. filed a grievance with the Union.

Also on April 8, 2002, another meeting was held to review additional outside evaluations of K.A.'s disability, including Dr. Lorber's evaluation report.[9]   Individuals present at the meeting were as follows: Megan Guenther, counsel for the District, then Superintendent of the District Dorothy Romberg, Sheryl Piercy on behalf of Tri-County, Tricia C., Tricia C.'s friend Nancy McGinnis, and Tricia C.'s educational expert Sheri Zalar. Tricia C. states that during that meeting, Guenther made the following comment in the presence of other individuals: "I'll get $50,000 and you won't get shit." Second Amended Complaint (d/e 43), ¶ 143.  According to Tricia C., Piercy neither objected to this verbal threat nor disassociated herself from the statement.  Tricia C. Dep. at 203-204.

Tricia C. testified in her deposition that she did not believe Piercy told Guenther to make the above statement.  Tricia C. Dep. at 198.  Tricia C. testified that she was not aware of anyone who received different treatment from Guenther, and did not know whether or not Guenther had made similar comments to other parents.  Id. at 204-205.  Tricia C. states in her Affidavit that she understood Guenther's statement as an attempt to

---

[9]The meeting was originally scheduled for 9:00 a.m., but was rescheduled for 11:00 a.m. at the request of Tricia C.  Defendants' Appendix, Ex. 7, Tricia C. Fax and IEP Notices.

intimidate her into abandoning the due process hearing.  <u>Tricia C.'s Aff.</u>, ¶ 38.  Contrary to her deposition testimony, Tricia C. further states in her Affidavit that Piercy's failure to "disavow the conduct or verbal threat or distance Tri-County as a local educational agency or herself individually from Atty. Guenther's conduct or verbal threat, but adopted the threat by her silence and thereby consented to this threat . . . ."  <u>Id.</u> at ¶ 39.

The District set an IEP meeting for K.A. on May 24, 2002.  Tri-County and Piercy advised Tricia C. in writing that if she wished to change the meeting date, she would need to notify Tri-County personnel by May 17, 2002.  After the deadline to notify expired, on May 21, 2002, Tricia C. requested a continuance based on the fact that K.M. was undergoing an ankle surgery on May 24, 2002.  Tricia C. testified that she was not aware of the need for surgery until after a doctor's appointment on May 20, 2002.  <u>Tricia C. Dep.</u> at 81.  Defendants denied Tricia C.'s request.  Defendants refused not only because Tricia C.'s request was untimely but also because school ended that day and was not in session the following week.  <u>Defendants' Response to Plaintiffs' Statement of Additional Material Facts (d/e 88)</u>, Ex. B, <u>Excerpt of Sheryl Piercy's Testimony at the Administrative Hearing</u> at 6645-46.  Piercy, however, recommended that Tricia C. could

participate by phone from the hospital. Tricia C. declined to do so and missed the meeting to attend her daughter's surgery. Tricia C. states in her Affidavit that "[she] was emotionally unable to participate in the meeting by phone during the surgery due to [her] anxiety and concern for K.M. while she was in surgery." Tricia C. Aff., ¶ 35. Tricia C. states that Piercy's proposal was disingenuous because it placed her in a severely emotionally distressful position in which she had to choose between the welfare of her two children.

The May 24, 2002, meeting was eventually held without Tricia C.'s presence. It was determined at the meeting that K.A.'s primary disability was learning disability and that the educational placement of K.A. should be changed to a cross-categorical classroom for students with learning disabilities at Northwest School. Defendants' Appendix, Ex. 9, IEP dated 5/24/02.

With respect to Tricia C.'s employment, by a letter dated May 29, 2002, the Union informed Tricia C. that the Grievance Committee would not arbitrate her case. Tricia C. Dep. at 35; Defendants' Appendix, Ex. 17, Union letter dated 5/29/02. Tricia C. testified that she received medical treatment for "emotional distress" until May of 2002, from her family

doctor.  <u>Tricia C. Dep.</u> at 206-208.  However, following her discharge, she did not have the financial means to afford the treatment.

In November 2002, the District sought further evaluation of K.A. by Dr. Golden.  Dr. Golden is a clinical psychologist, who has been practicing since 1972, with extensive experience in evaluating children with disabilities.  He was previously the clinical director of a private school for students with disabilities, and consulted with several districts.  The due process hearing officer directed Tricia C. to consent to the additional evaluation.  In the process of evaluating K.A., Dr. Golden requested Tricia C. to complete a personality inventory called the Minnesota Multiphase Inventory (MMPI).  Tricia C. states in her Affidavit that she took the MMPI, consisting of over 500 highly invasive questions, under duress. <u>Tricia C. Aff.</u>, ¶¶ 59-60.  Due to the highly invasive nature of the questions, such as "Do you ever have uncontrollable sexual thoughts in your head?", Tricia C. states that she experienced severe emotional distress.  <u>Id.</u> at ¶¶ 60-61.

Dr. Golden testified at the administrative hearing that he asked Tricia C. to take the MMPI because he thought that the results might affect the educational programming recommendations for K.A.  <u>Defendants'</u>

Appendix, Ex. 11, Excerpt of Dr. Golden's Testimony at the Administrative Hearing 1/22/03 at 1874.  Dr. Golden further testified that, in order to develop and devise the best educational program suitable for K.A., it was necessary to conduct an evaluation of Tricia C., as she is the person intimately involved in K.A.'s care.  He also stated that he was not alone in taking this approach.  Dr. Golden stated that Dr. Berland, for instance, discussed with Tricia C. regarding her childhood and her marriage.  Id. at 1875.  Dr. Golden further testified:

> A.  I asked -- let me see if I understand this.  The question is did I ever get permission to assess her personality?
>
> Q.  From [Tricia C.].
>
> A.  And that's the question you want me to answer.  Is it okay?
> [Tricia C.]: Yeah.
>
> A.  From the time that I was doing this evaluation I was doing an assessment of the family structure, the family dynamics including [Tricia C.], and that's not to mean the way you phrased it as her personality per se, but I certainly was interested in attributes of how she deals with things.
> As far as this test per se, I asked her if she would take it.  She said yes.  I asked her if she had any problems.  I came back innumerous times throughout, probably six, seven, eight times during the evaluation to see if she had any questions, to see

> if there was any problems, any issues or whatever, and she never said there were.  She knew what she was taking, so all she had to do was say she didn't want to take it, was I would rather not take this.

Id. at 1876-77.  Dr. Golden also testified at the due process hearing that no one influenced his judgment or his findings with respect to his evaluation of K.A.

Sometime later, Tricia C. attended a PACE (Parents Alliance for Compliance in Special Education) meeting which was open to the general public.  Piercy was also present at the PACE meeting as a member of the audience.  Tricia C. testified that when she saw Piercy, she questioned Piercy's presence at the meeting and became suspicious when she heard from McGinnis that Piercy had privately asked McGinnis "how she knew [Tricia C.] and Lynn" (another parent attending the meeting).  Tricia C. Dep. at 233.  According to Tricia C., Piercy was at the meeting to check up on her.  Id. at 230.

On October 20, 2003, Tricia C. attended a public meeting at the Renaissance Hotel in Bloomington, Illinois, in connection with an Illinois State Board of Education compliance monitoring review of Tri-County. Tricia C. Aff., ¶ 53.  Shortly after Tricia C. arrived, she heard from those in

attendance that a school board member from the District, Augusta Scott, and members of the panel, were talking openly about her due process hearing.  <u>Tricia C. Dep.</u> at 236; <u>Tricia C. Aff.</u>, ¶ 53.  Tricia C. testified at her deposition that she did not believe Piercy had arranged and directed Scott to openly attack her.  <u>Tricia C. Dep.</u> at 239.  She further testified that "[Piercy] was very afraid that something like that was going to happen. [Piercy] was doing everything in her capacity to make sure that it didn't." <u>Id.</u> at 239.

Contrary to her deposition testimony, Tricia C. states in her Affidavit that "Piercy wanted [her] to be humiliated and encouraged this activity behind the scenes, and only disavowed those expected attacks in advance of the meeting in letters with the ISBE to protect herself, not to stop the expected attacks on me."  <u>Tricia C. Aff.</u>, ¶ 54.  Tricia C. states that she experienced humiliation and severe emotional distress as a result of being publicly attacked for pressing her due process claims.

From December 2002 to October 2003, the ISBE held a 35-day due process hearing.  On April 12, 2004, the hearing officer issued his decision.[10]

---

[10]The hearing officer's decision is outlined in detail in the Opinion dated November 4, 2005 (d/e 63).

<u>ANALYSIS</u>

The Defendants seek summary judgment on all remaining counts. The Defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material . . . ." <u>Fed. R. Civ. P.</u> 56(c).  To do so, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the Plaintiffs. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Once the Defendants have met their burden, the Plaintiffs must present evidence to show that issues of fact remain with respect to an issue essential to their case, and on which they will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  When the evidence in the record is viewed in the light most favorable to the Plaintiffs, the Defendants are entitled to summary judgment.

A.   <u>Section 1983 Equal Protection Claims Against Tri-County and</u>

26

Piercy (Count VI)

Plaintiffs filed 42 U.S.C. § 1983 equal protection claims against Tri-County and Piercy based on "acts and omissions pursuant to IDEA" and "customs, policies, and practices . . . which violated IDEA." Second Amended Complaint, ¶¶ 242-43. Plaintiffs base their equal protection claim on a "class of one" equal protection theory. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The Seventh Circuit has recognized that a person may state a claim under a "class of one" theory where the plaintiff alleges: (1) that she has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant. See McDonald v. Village of Winnetka, 371 F.3d 992, 1001-02 (7th Cir. 2004); Nevel v. Village of Schaumberg, 297 F.3d 673, 681 (7th Cir. 2002).

Evidence of similarly situated persons "is required because '[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause.'" Maulding Development, LLC v. City of Springfield, Il et al., 453 F.3d 967 (7th Cir. 2006) (quoting E&T Realty v. Strickland, 830 F.2d 1107, 1109 (11th Cir. 1987)); see Olech, 528 U.S. at

564.  "[The Seventh Circuit has] imposed on plaintiffs a 'high burden' in establishing someone who is similarly situated in these type of cases."  Id. (citing Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455-56 (7th Cir. 2002)).  Indeed, "[i]t is clear that similarly situated individuals must be very similar indeed."  McDonald, 371 F.3d at 1002 (citing Purze, 286 F.3d at 455-56).  This means that, to successfully establish that individuals are similarly situated, the plaintiffs must demonstrate that they are "'prima facie identical in all relevant respects.'"  Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d, 677, 680 (7th Cir. 2005) (quoting Purze, 286 F.3d at 455-56).

### i.  Individual Liability Against Piercy

It is well established that "Section 1983 imposes personal liability when an individual, acting under color of law, deprives another individual of his Constitutional rights."[11]  Kramer v. Village of North Fond du Lac, 384

---

[11]Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

The Equal Protection Clause of the Fourteenth Amendment, states: "No state shall... deny to any person within its jurisdiction the equal protection of the laws."  U.S.Const,

F.3d 856, 866 (7th Cir. 2004).  A supervisory official cannot be held liable under § 1983 on the basis of respondeat superior.  See, e.g., Id. at 867.  A supervisory official, like Piercy in this case, may only be liable under § 1983 if she was personally responsible for the alleged wrongful act or the deprivation of Plaintiffs' constitutional rights.  To show personal involvement, a plaintiff must demonstrate that the defendant was personally involved in depriving her of her constitutional right, but evidence of direct participation in the alleged wrongdoing is not required.  Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985) (internal citations omitted).  The requirement is still satisfied if the plaintiff establishes that the defendant acted or failed to act "with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."  Id.

Plaintiffs argue that Piercy deprived Tricia C. of specific statutory rights guaranteed under the IDEA by: (1) failing to take any action during the April 8, 2002, meeting when Guenther allegedly threatened Tricia C., thereby adopting the verbal threat by her silence, (2) breaching the August

---

amend. XIV, § 1.

24, 2001, Mediation Agreement in bad faith, and (3) causing Tricia C. to lose her job by repeatedly scheduling and conducting meetings only during the day time on weekdays only.[12]   The Court addresses each of these contentions in turn.

Tricia C. points to the following alleged statement by Guenther to her during the April 8, 2002, meeting: "I'll get $50,000 and you won't get shit."   Second Amended Complaint, ¶ 143.   Tricia C. states that she understood the statement as an attempt to threaten her so that she would abandon the due process hearing.  Tricia C. argues that Piercy adopted the verbal threat by remaining silent and failing to do anything to disassociate herself from such a statement.  Tricia C. further argues that, by remaining silent, Piercy individually consented to the threat.

Tricia C.'s unsupported assertions cannot defeat a motion for summary judgment.  See Ballance v. City of Springfield, 424 F.3d 614, 620

---

[12]The IDEA provides in part:
(a) Establishment of procedures.
Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.
20 U.S.C. § 1415(a).

(7th Cir. 2005) (citing <u>Rand v. CF Indus., Inc.</u>, 42 F.3d 1139, 1146-47 (7th

Cir. 1994)).  The record is devoid of any evidence suggesting that Piercy had

prior knowledge that Guenther was going to make such a statement to

Tricia C. or that Piercy somehow directed Guenther to make such a

statement so that Tricia C. would abandon the due process hearing.

Plaintiffs cite to no legal authority for their proposition that an attorney's

statement regarding her stance on settlement should be imputed to an

individual, a non-client of the attorney, based on the fact that the individual

remained silent.[13]

More importantly, Tricia C.'s bald assertions are belied by her

deposition testimony in which she testified that she did not believe Piercy

told Guenther to make the above statement.   <u>Tricia C. Dep.</u> at 198.

Plaintiffs have simply failed to put forth evidence showing that Piercy

deprived the Plaintiffs of their constitutional rights.  As such, the Court sees

no basis to impute Guenther's statement to Piercy.

---

[13]The Court notes that an attorney's statement relating to his legal position on a case is generally imputed to the client; however, the statement at issue here relates to Guenther's opinion regarding settlement; it was not a statement concerning Guenther's stance on the legal disposition of the case.  More importantly, Guenther was representing the District, not Piercy or Tri-County directly.  Guenther's client, the Superintendent of the District, was present at the meeting.  The basis on which Plaintiffs seek to impute liability on Piercy for Guenther's statement is too tenuous.

Plaintiffs next argue that Piercy was personally involved in breaching the August 24, 2001, Mediation Agreement in which the District insisted on waiting for Dr. Golden's evaluation before reconsidering K.A.'s interim educational placement.  Plaintiffs contend that Piercy played a pivotal role in drafting the Mediation Agreement and implementing the terms of the Agreement on behalf of the District.   In support of their contention, Plaintiffs point to District Superintendent Baily Climer's testimony at the due process hearing in which he testified that "Tri-County plays a great role in providing services to our special needs learners." Plaintiffs' Response, Ex. 11, Excerpt of Baily Climer's Testimony at the Due process hearing at 3557. This statement is not enough to establish that Piercy was involved in the mediation process and caused the breach of the Mediation Agreement. Superintendent Climer's general statement concerning Tri-County's role in providing special education services to the District's students with learning disabilities does not suggest that Piercy and Tri-County were directly involved in negotiating the Mediation Agreement or that they somehow caused the breach of the Mediation Agreement.   Indeed Plaintiffs' contention is unpersuasive because the undisputed evidence shows that Piercy and Tri-County were not even parties to the Mediation Agreement.

Nor were they even present at the mediation meeting.  The undisputed evidence shows that the Mediation Agreement was entered between Tricia C. and the District.  The undisputed evidence further shows that it was the District that insisted on waiting for Dr. Golden's evaluation to determine K.A.'s interim educational placement, even after Dr. Berland indicated that K.A. was not behavior disordered.  There is no evidence that would support a finding that Piercy was personally involved in causing the breach of the Mediation Agreement.

Plaintiffs next argue that Piercy engaged in a pattern or practice in which she would schedule IEP meetings during the day time on weekdays only, even after Tricia C. requested the meeting dates to be rescheduled because such dates conflicted with her work schedule.  Tricia C. contends that Piercy's failure to reschedule meetings caused her to take excessive leaves of absence from work, which culminated in her losing her job.  The evidence in the record, however, shows that Tricia C. did not lose her job because of excessive absences, as she claims, but was discharged because she failed to submit her physician's statement.

Tricia C. was on medical leave from October 2001 until March 2002. By a letter dated April 1, 2002, Cutler-Hammer requested Tricia C. to

submit a physician's statement by April 8, 2002, if she wished to extend her leave. The letter further stated that if the company did not receive the required medical documentation from her by April 8, 2002, she would be considered to have voluntarily terminated her employment. Despite the fact that Tricia C. testified that her boyfriend, Crabtree, presented Cutler-Hammer with her physician's statement, the company fired her. In a letter dated April 8, 2002, the company informed Tricia C. that she was terminated effective April 8, 2002, because she had failed to submit the physician's statement. The record evidence demonstrates that Cutler-Hammer discharged Tricia C. because she failed to submit the physician's statement. Plaintiffs have failed to put forth evidence that would support a finding that Cutler- Hammer fired her for her excessive absences.

To the extent that Tricia C. claims that Piercy failed to reschedule meetings for her during the period from October 2001 until March 2002, so that the meeting dates would not conflict with her work schedule, Tricia C.'s claim is unconvincing because she was not even working from October 2001 until March 2002. Moreover, the evidence shows that Piercy accommodated Tricia C.'s request when she requested the December 6, 2001, and January 22, 2002, meetings to be rescheduled to other dates and

when she requested a time change with respect to the April 8, 2002.  The evidence further shows that Piercy was unable to reschedule the May 24, 2002, meeting because Tricia C. failed to give Piercy timely notice and because school ended on May 24, 2002, and was not in session the following week.  The evidence shows that Piercy recommended that Tricia C. participate via phone, but Tricia C. declined to do so as she had to be in the hospital with K.M. who was undergoing ankle surgery.  Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that the Plaintiffs have failed to identify facts sufficient to support a finding that Piercy was directly involved in depriving them of their constitutional rights with respect to each of their contentions.

### ii.   Municipal liability against Tri-County

Plaintiffs' § 1983 claim against Tri-County is similarly unpersuasive. In order to establish municipal liability against Tri-County under § 1983, Plaintiffs must show that: (1) they suffered a deprivation of a federal right, here the right to equal protection; (2) as a result of either an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for Tri-County; which (3) was the proximate cause of their injury.  See Ovadal v. City of Madison, Wisconsin, 416 F.3d 531, 535 (7th

Cir. 2005).  "A plaintiff may demonstrate the existence of an official policy in one of three ways: 'proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority.'" Killinger v. Johnson, 389 F.3d 765, 771 (7th Cir. 2004) (quoting Kujawski v. Bd. of Com'rs of Bartholomew Co., Ind., 183 F.3d 734, 737 (7th Cir. 1999)).  Plaintiffs contend that Tri-County's wide-spread practice of scheduling meetings during the day time only on weekdays constituted a custom within the meaning of § 1983.  Specifically, Tricia C. states in her Affidavit that there were about 20 meetings for K.A. that Tri-County scheduled during the day time on weekdays only.  Tricia C. Aff., ¶ 11. Plaintiffs argue that such custom deprived them of their rights under the IDEA.

"[G]overnmental customs, in contrast to official policies, do not receive formal approval through . . . [the local government's] official decisionmaking channels, . . . ; rather, they are simply persistent and widespread . . . practices of . . . officials.  The word 'custom' generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances."  Jones v. City of Chicago, 787 F.2d 200,

204 (7th Cir. 1986) (internal quotations and citations omitted) (citing Webster's Third New International Dictionary of the English Language 550 (unabridged edition) (1963)).  The Defendants concede that they engaged in repeated practices of scheduling and conducting meetings during the day time on weekdays only.  Such repeated practices may constitute a custom under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); Jones, 787 F.2d at 204.  Under Monell, Plaintiffs must further show "[a]t the very least, . . . an 'affirmative link' [or causal connection] between the custom at issue (especially when the custom itself does not establish wrongdoing [as in this case]) and the constitutional deprivation alleged to cast blame on the [Defendants]."  Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).

As evidence to show that Tri-County failed to reschedule meetings when the dates conflicted with Tricia C.'s work or sleep schedule, Plaintiffs rely overwhelmingly on alleged violations that occurred outside the statute of limitations period.  As noted earlier, the Court will not consider any alleged violations that are outside the two-year statute of limitations for § 1983 claim.  The only claim of alleged violation that occurred within the statute of limitations period is the May 24, 2002, meeting.  As explained

earlier, the undisputed evidence shows that Tricia C. failed to notify the Defendants of her request for a date change in a timely manner.  Piercy also testified at the administrative hearing that she was unable to reschedule the meeting because the school year ended on May 24, 2002; school was not in session the following week.  It is undisputed that Piercy offered Tricia C. the opportunity to participate via telephone, but she declined to do so. Plaintiffs have failed to identify facts to support a finding that Tri-County deprived them of their constitutional rights by repeatedly scheduling and conducting meetings during the day time on week days only.

Additionally, Plaintiffs' alleged claim of violation is not enough to establish a constitutional deprivation.  As Defendants indicate, it is not surprising to schedule and conduct meetings concerning educational placement of a child with a learning disability during the day time on weekdays only, "because school employees are not available any other time." Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment (d/e 84) at 13.[14]  As such, the mere fact that the scheduled

---

[14]As noted by the Defendants, The Illinois Legislature's enactment of the School Visitation Act is also indicative of the fact that school meetings and conferences are generally held during the work day.  820 ILCS § 147/5.  The Legislature enacted this Act in order "to permit employed parents and guardians who are unable to meet with educators because of a work conflict the right to an allotment of time during the school year to attend necessary educational or behavioral conferences." Id.  Under the Act,

meetings at times conflicted with Tricia C.'s work and sleep schedule is not enough to show that the Plaintiffs were deprived of their constitutional rights.

### iii.   Other Claims

Plaintiffs do not expressly assert that their right to equal protection was violated on the basis that Tricia C. was asked to take the MMPI, consisting of what she describes as highly invasive questions.  To the extent that Tricia C. relies on this request to argue that her right to equal protection was violated by Piercy or Tri-County, Tricia C.'s claim lacks merit.  Tricia C. argues that "Tri-County and Piercy controlled the specific referral to Golden as the technical organization that Golden looked to for background information about what to examine during K.A.'s evaluation because Tri-County and Piercy provided the psychological services and records Dr. Golden reviewed in deciding what to do."  Plaintiffs' Response at 15.  It is undisputed that the hearing officer directed Tricia C. to consent to Dr. Golden's evaluation.  There is no evidence in the record to support

---

"[a]n employer must grant an employee leave up to a total of 8 hours during any school year, and no more than 4 hours of which may be taken on any given day, to attend school conferences or classroom activities related to the employee's child if the conference or classroom activities cannot be scheduled during nonwork hours; . . . ." 820 ILCS § 147/15(a).

Tricia C.'s contention that Tri-County and Piercy controlled the specific referral to Dr. Golden or that they provided records to Dr. Golden that influenced his evaluation method.  In fact, Dr. Golden testified at the administrative hearing that his findings relating to K.A. were not influenced by anyone.  Excerpt of Dr. Golden's Testimony at the Administrative Hearing at 6929.  He stated that Tricia C. did not object when he asked her to take the MMPI.  Id. at 1876.  He stated that he asked Tricia C. to take the test because he was interested in finding out about K.A.'s family structure and family dynamics which would ultimately assist him in devising the best possible educational  recommendation for K.A.  Id. at 1874-76. Even assuming that Piercy and Tri-County committed the alleged acts, Plaintiffs' claims with respect to the MMPI is not enough to support a finding that Plaintiffs' right to equal protection was violated.

Plaintiffs also do not expressly assert that their right to equal protection was violated on the basis that Piercy was present at the PACE meeting to engage in surveillance of Tricia C.  To the extent that Tricia C. relies on this instance to argue that her right to equal protection was violated by Piercy, Tricia C.'s claim is similarly unpersuasive.  The only evidence Tricia C. has identified to argue that Piercy was present at the

PACE meeting to "check up" on her is the fact that Piercy had privately asked McGinnis how she knew Tricia C. This is insufficient to support a finding that Piercy violated Plaintiffs' constitutional rights.

Plaintiffs further do not expressly assert that their right to equal protection was violated on the basis that Piercy directed or encouraged Scott to publicly attack Tricia C. during the October 20, 2003, public conference in Bloomington, Illinois. To the extent that Tricia C. relies on this instance to argue that her right to equal protection was violated by Piercy or Tri-County, Tricia C.'s claim is again unavailing. Tricia C.'s assertions lack support in the record. Tricia C. admitted at her deposition that she did not believe that Piercy directed Scott to speak out against her. In fact, she testified that Piercy was doing everything in her capacity to ensure that such outbreak did not occur at the public forum. Tricia C. Dep. at 239-240. The only evidence in the record that Tricia C. relies on is her Affidavit. As noted supra, Tricia C. cannot create a genuine issue of material fact by submitting a belated Affidavit that contradicts her prior deposition testimony because "[i]f such contradictions were permitted . . . 'the very purpose of the summary judgment--to weed out unfounded claims, specious denials, and sham defenses--would be severely undercut.'" Ineichen v. Ameritech, 410

F.3d 956, 963 (7th Cir. 2005) (quoting <u>Bank of Illinois v. Allied Signal Safety Restraint Sys.</u>, 75 F.3d 1162, 1168-69 (7th Cir. 1996)).  Thus, the Court finds that Plaintiffs have failed to point to facts that would support a finding that the Defendants deprived them of their constitutional rights.

Even assuming that Tri-County and Piercy deprived the Plaintiffs of their constitutional rights, Plaintiffs cannot prevail on their equal protection claims because they have failed to point to others similarly situated who were intentionally treated differently.

The Plaintiffs argue that "Tri-County and Piercy individually attempted to deny the Plaintiffs their right to 'participate in meetings with respect to identification, evaluation, and educational placement of the child' by treating them differently in the scheduling, rescheduling and conducting of meetings [(ranging from mediation, informal negotiations to brief scheduling meetings between Tricia C. and Tri-County staff)] and thereby denied them their right to participation." <u>Plaintiffs' Response</u>, at 7 (quoting 20 U.S.C. § 1415(b)(1)).  Plaintiffs' equal protection claims are doomed because they have not identified others similarly situated who were intentionally treated more favorably with respect to each of their claims of violations against Tri-County and Piercy.   Tricia C. testified in her

deposition that she was not aware of any other similarly situated parents who were treated more favorably by Tri-County and Piercy.  In an attempt to create a genuine issue of material fact, Tricia C. attests in her Affidavit that two parents, namely Laughlin and Snyder, were similarly situated to her but were treated more favorably by Tri-County and Piercy in scheduling, rescheduling and conducting of meetings related to their own children.

Specifically, Tricia C. argues that both Laughlin and Snyder told her that they did not encounter any problems in rescheduling meetings with Tri-County and its staff.  Tricia C. attests in her Affidavit that "Neither Ms. Laughlin nor Ms. Snyder reported any harassment, public attacks or surveillance of their activities by Tri-County or Piercy, even though they demanded better services from Tri-County for their children with disabilities . . . ." Tricia C. Aff., ¶ 44.  She also attests that "[b]oth Ms. Laughlin and Ms. Snyder were involved in various meetings where services were negotiated with Tri-County and Piercy regarding their children with disabilities, but they were not threatened in such negotiations." Id. at ¶ 45. As noted supra, the Court will not consider such statements because they are inadmissible hearsay statements.

Even if the Court considers such statements, Plaintiffs' equal

43

protection claims under the "class of one" theory nonetheless fail because the record lacks evidence to determine whether Snyder and Laughlin are, in fact, prima facie identical to the Plaintiffs in all relevant respects. Indeed, aside from Tricia C.'s unsupported assertions or her belated Affidavit statements that contradict her prior deposition testimony, there is no evidence regarding the severity of Laughlin and Snyder's children's disability. There is no evidence regarding the details of why Laughlin and Snyder sought better services from Tri-County and Piercy with respect to their children, and the extent of Piercy's involvement in making decisions, including scheduling of meetings, relating to Snyder and Laughlin's respective children.

Likewise, there is no evidence regarding how many times Snyder and Laughlin sought to reschedule meetings, how much advance notice Snyder and Laughlin gave to reschedule meetings, and how many times Tri-County and Piercy denied their requests to reschedule. Without such evidence, the Plaintiffs could not meet their high burden of establishing that Snyder and Laughlin were prima facie identical in all relevant respects. Defendants are entitled to summary judgment on the Plaintiffs' § 1983 equal protection claims against Tri-County and Piercy.

B. <u>Intentional Infliction of Emotional Distress (IIED) Claim (Count V)</u>

The Court declines to exercise supplemental jurisdiction with respect to the Plaintiffs' state law claim of IIED.

<u>CONCLUSION</u>

THEREFORE, as set forth above, the Defendants' Motion to Strike (d/e 85) is ALLOWED, in part, and DENIED, in part. Defendants' Motion for Summary Judgment (d/e 74) is ALLOWED with respect to the Plaintiffs' equal protection claims. The Court declines to exercise supplemental jurisdiction with respect to the Plaintiffs' state law claim of intentional infliction of emotional distress. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: August 24, 2006.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE